IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. TONY SERRA, et al.<br><br>        Plaintiffs,<br><br>v.<br><br>HARLEY LAPPIN, et al.<br><br>        Defendants. | No. C07-01589 MJJ<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## INTRODUCTION

Before the Court is Defendants Harley Lappin ("Lappin") and Robert E. McFadden's ("McFadden") (collectively, "Defendants") Motion to Dismiss. (Docket No. 17.) Plaintiffs J. Tony Serra ("Serra"), Jeanine Santiago ("Santiago") and Victor J. Cordero ("Cordero") (collectively, "Plaintiffs") oppose the Motion. For the following reasons, the Court **GRANTS** the Motion.

## FACTUAL BACKGROUND

The material allegations are as follows.

Plaintiff Serra was a prisoner incarcerated at the Federal Prison Camp at Lompoc, California ("Lompoc") from May 15, 2006 to February 12, 2007. Serra worked on the prison camp grounds as a waterer and supported the work of the Federal Prison Industries (known as "UNICOR") making cable and dairy products. Serra and other prisoners were paid as low as nineteen cents per hour for this work.

Plaintiff Cordero was a prisoner incarcerated at Lompoc from 2003–2004. Cordero worked for UNICOR and was paid $145 a month. Plaintiff Santiago was incarcerated at the Federal Correction Institute, Camp Parks, Dublin, California in September 2006 and remains in prison. Santiago also works for UNICOR and earns $60 a month.

Defendants are Federal Bureau of Prisons employees. Lappin is the Director of the Bureau of Prisons of the United States, B.G. Compton was the Warden of Lompoc, and McFadden is the Western Regional Director of the Bureau of Prisons and oversees Dublin.

In July 2007, Plaintiffs filed this putative class action seeking monetary damages and injunctive and declaratory relief for Defendants' alleged violations of: (1) the Fifth and Thirteenth Amendment to the United States Constitution; (2) the United Nations Covenant on Civil and Political Rights and on Prisoners' Rights; and (3) the Sherman Act, 15 U.S.C. §§ 1, 2, 15, 22 and 26. Defendants now seek an order dismissing Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The Court resolves the matter solely on the 12(b)(6) motion.

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Courts may grant a 12(b)(6) motion without leave to amend where amendment would be futile. *See Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002).

2

## ANALYSIS

As background, the Federal Prison Industries, known by its trade name UNICOR, is a wholly owned government corporation with a board of six directors appointed by the President. *See* 18 U.S.C. § 4121; 31 U.S.C. § 9101. UNICOR, which was created as a program of the Bureau of Prisons, oversees industrial operations in federal penal and correctional institutions and is directed to provide employment for as many inmates who are eligible to work as is reasonably possible. *See id.* § 4122(a), (b); 28 C.F.R. § 345.10. Proceeds from the sale of products manufactured by UNICOR go into a Prison Industries Fund, out of which the corporation is authorized to, inter alia, "provide for the payment to the inmates or their dependents such pecuniary earnings as he may deem proper, under such rules and regulations as he may prescribe." 18 U.S.C. §§ 4125(d), 4125(c)(4). Pay rates are set by the Board of Directors of UNICOR and all changes in the rates require approval by the Board. *See* 28 C.F.R. § 345.10.

In addition, some federal inmates are assigned work that is designed to maintain the institution and its grounds. *See* 28 C.F.R. § 545.20. This work may be compensated by "performance pay," which varies depending on the pay grade assigned to each type of work, and by special awards and bonuses, which are left to the discretion of the Warden. *See* 28 C.F.R. §§ 545.20(b), 545.26.

In this action, Plaintiffs claim that the low wages paid to prisoners by UNICOR violate the United States Constitution, international law, and the Sherman Act. In this Motion Defendants seek to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted. In the event that any claim is not dismissed, Defendants additionally contend: (1) Plaintiffs' damages claims are barred by sovereign immunity; (2) insofar as Plaintiffs bring this action against Defendant McFadden in his individual capacity, the claims are barred by the Westfall Act and qualified immunity; (3) Plaintiff Cordero's claims are barred by the statute of limitations; and (4) Plaintiffs Serra and Cordero lack standing to pursue equitable relief.

Regarding the constitutional and international claims, the Court finds that Plaintiffs fail to state a claim under either. Accordingly, the Court addresses these two issues in turn below. Other than addressing sovereign immunity, the Court does not reach Defendants' additional objections, as

3

they are moot in light of the above conclusion. In addition, at oral argument, Plaintiffs withdrew their Sherman Act claims, so the Court need not reach Defendant's contentions relevant to those claims. Finally, the Court declines to grant leave to amend, as amendment would not allow Plaintiffs to state a plausible or viable legal claim.

### I.   Constitutional Claims

Plaintiffs' first claim alleges that Defendants, acting in their official capacity, violated Plaintiffs' rights under the Fifth and Thirteenth Amendments by under-compensating prisoners for their labor. (Compl. ¶ 16.) Plaintiffs allege pay as low as $0.19 per hour and request higher salaries, such as $25.00 per hour. (*Id.* ¶¶ 5, 9.) Plaintiffs seek equitable relief and monetary damages. (Compl. ¶ 16.) The Court turns first to the viability of Plaintiffs' claims for money damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), then addresses whether Plaintiffs' allegations are sufficient to constitute a claim for any relief under either the Fifth or Thirteenth Amendments.

###    A.   Plaintiffs' *Bivens* Claims Do Not Overcome the Sovereign Immunity Bar of Monetary Damages Against the Government.

Defendants move to dismiss Plaintiffs' constitutional claims for monetary damages because Plaintiffs allege that Defendants acted in their *official* capacities, not their *individual* capacities, and the claims are thus barred by sovereign immunity. (Mot. to Dismiss at 7; Compl. ¶ 16.) Plaintiffs respond by attempting to broaden their claim to include a claim against Defendants in their individual capacities. (Opp. at 6–7.) The Court finds the claims are barred as alleged—against the officers in their official capacities—and that leave to amend in order to include a claim against Defendants in their individual capacities, as discussed below, would be futile.

Unless the government waives its immunity, claims for monetary damages against the federal government are barred by sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Suits against government officials in their official capacity are suits against the government, and are therefore barred by sovereign immunity. *Balser v. Dept. of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003). However, in *Bivens*, the Supreme Court recognized the right to collect monetary damages for constitutional violations perpetrated by government officials, where the

4

official was sued in his or her individual, rather than official, capacity. *See Bivens*, 403 U.S. at 390–91; *see also Balser*, 327 F.3d at 907–09 (clarifying the 'individual capacity' component). Under *Bivens* a plaintiff can avoid the sovereign immunity bar by suing a defendant in his or her *individual* capacity. *Balser*, 327 F.3d at 907–09. "[A] *Bivens* claim . . . does not state a viable cause of action against the United States [official] acting in his *official* capacity." *Id.* (emphasis added).

Here, constitutional violations are alleged against Defendants "in their official capacities," and are therefore barred by sovereign immunity. (Compl. ¶ 16; *see also* Opp. at 6 ("The suit should be considered a suit [against Defendants] in their official capacity as an action against the United States . . . .").) *See Balser*, 327 F.3d at 907–09. The Court therefore **GRANTS** Defendants' Motion as to the constitutional claim for monetary damages.

**B.     Plaintiffs Fail to State a Constitutional Claim For Any Other Relief.**

   **1.     Plaintiffs Have Not Alleged a Cognizable Theory Showing a Violation of Their Thirteenth Amendment Rights.**

Plaintiffs claim that the low wages they received for their prison work violates the Thirteenth Amendment. (Compl. ¶ 16.) The Court understands this claim to assert that low remuneration for prisoners' labor violates the Thirteenth Amendment's ban on involuntary servitude. *See* U.S. CONST. amend. XIII. Defendants move to dismiss this claim because the Thirteenth Amendment's ban on involuntary servitude explicitly exempts work done while serving a criminal sentence. (Mot. to Dismiss at 14–16.) Plaintiffs do not substantively address the Thirteenth Amendment in their Opposition.

Although the Thirteenth Amendment prohibits slavery and involuntary servitude, it explicitly exempts forced labor that is imposed as punishment pursuant to a criminal conviction. U.S. CONST. amend. XIII. "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States . . . ." *Id.* § 1. Accordingly, "the Thirteenth Amendment does not apply where prisoners are required to work in accordance with prison rules." *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *see also United States v. Reynolds*, 235 U.S. 133, 149 (1914) ("[T]he state has authority to impose

involuntary servitude as a punishment for crime. This fact is recognized in the 13th Amendment . . . ."); *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) ("Where a person is duly tried, convicted, sentenced and imprisoned for crime in accordance with law, no issue of peonage or involuntary servitude arises. . . . The Thirteenth Amendment has no application . . . .").

In the instant case, Plaintiffs have not pleaded facts asserting a cognizable violation of the Thirteenth Amendment. All Plaintiffs were inmates while performing the work in question. (Compl. ¶¶ 5–7.) Therefore, they fall within the boundaries of allowable conduct under the Thirteenth Amendment. *See Berry*, 39 F. 3d. at 1057. Absent any allegation that Plaintiffs fall outside the Thirteenth Amendment's explicit exception (e.g., because Plaintiffs were not "duly convicted"), Plaintiffs have not stated a plausible or cognizable legal theory for a Thirteenth Amendment violation.[1] *See Twombly*, 127 S.Ct. at 1974; *SmileCare Dental Group*, 88 F. 3d at 782.

### 2. Plaintiffs Have Not Alleged a Cognizable Theory Showing a Violation of Their Fifth Amendment Rights.

Plaintiffs' Complaint also asserts a Fifth Amendment violation based on Defendants' alleged failure to adequately pay prisoners for their labor. (Compl. ¶¶ 16, 18.) The Court understands Plaintiffs' claim to be that they were denied equitable pay without due process. (*Id.*; *see also* Opp. at 13:9–11.) Defendants argue that: (1) Plaintiffs have not identified a constitutionally protected right that Defendants violated, and (2) Plaintiffs cannot show an absence of due process because Plaintiffs were convicted pursuant to a criminal trial. (Mot. to Dismiss at 16 n.9.) The Court agrees.

#### a. Plaintiffs Have Not Identified a Constitutionally Protected Right.

Defendants argue that the Court should dismiss Plaintiffs' Fifth Amendment claim because Plaintiffs have not identified an interest protected by the Constitution that has been violated. (Mot. to Dismiss at 16 n.9.) Plaintiffs respond by pointing to authority supporting rights to several basic necessities, but do not provide authority addressing the right to wages, particularly the $25.00 per hour pay they claim a right to here. (Opp. at 12–14.)

To bring a Fifth Amendment due process claim, the Plaintiff must identify an interest

---

[1] At oral argument, Plaintiffs' counsel stated that Plaintiffs do not allege that they were unduly convicted or sentenced.

6

1 protected by the Constitution and then establish that this interest was deprived without adequate
2 process. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Where the plaintiff
3 seeks to identify a property interest that has not previously been recognized, the plaintiff must show
4 entitlement to the interest, and that he or she relies on it in daily life. *See Bd. of Regents of State
5 Colleges v. Roth*, 408 U.S. 564, 577 (1972) (requiring legitimate claim of entitlement and reliance
6 thereon); *see also McMaster v. Minn.*, 819 F. Supp. 1429, 1442 (D. Minn. 1993) (requiring a
7 property interest in order to find a Fifth Amendment right to fair wages while in prison).

8 Here, Plaintiffs' Fifth Amendment claim is premised on the assumption that there is a
9 property right to adequate wages of $25.00 per hour for the work performed in prison. (*See* Compl.
10 ¶¶ 5, 9, 16.) Plaintiffs do not point to an established right to this pay while in prison, and the Court
11 is not aware of authority granting such a right. *See, e.g.*, *McMaster*, 819 F. Supp. at 1442 (finding
12 that federal law does not establish a right to fair wages for prisoners; and finding the assertion of a
13 right to be rebutted by regulations giving prison officials authority to set pay rates).[2] Accordingly,
14 Plaintiffs do not allege a cognizable theory asserting a right to pay for prison work, particularly at
15 the specific amount of $25.00 per hour.[3] *See Twombly*, 127 S.Ct. at 1974; *SmileCare Dental Group*,
16 88 F. 3d at 782.

17 **b.    Plaintiffs Do Not Allege An Absence of Due Process.**

18 Finally, Defendants contend that Plaintiffs cannot allege a violation of their Fifth
19 Amendment rights because their criminal convictions adequately provided due process. (Mot. to
20 Dismiss at 16 n.9.) In order to state a valid Fifth Amendment claim, Plaintiffs must assert that the
21 property interest at stake was deprived without due process. *Thompson*, 490 U.S. at 460. In the
22 present case, at oral argument, Plaintiffs' counsel confirmed that Plaintiffs do not allege that there

---

[2] *McMaster* relies on Minnesota law indicating that state prison officials have the authority to set pay. There is a federal equivalent found in 28 C.F.R. § 345.10.

[3] Plaintiffs' Opposition asserts a Fifth Amendment violation not alleged in the Complaint. Specifically, Plaintiffs assert that Defendants deprived Plaintiffs of their right to education and training by "forcing them to work for low wages." (Opp. at 14.) The Complaint, however, does not allege that Plaintiffs were denied education or training, that prisoners are forced to do the work in question, or that the work is being done to the exclusion of any education or training program. Furthermore, at oral argument, Plaintiffs counsel provided the Court with no indication that Plaintiffs could, or intended to, allege facts to support this new theory. Accordingly, this claim is not before the Court, nor is there any indication that granting leave to amend is appropriate.

7

1 was a lack of due process in their convictions or sentencing.  Therefore, Plaintiffs cannot allege a
2 claim based on the absence of due process, and thus cannot plead a viable claim for a violation of
3 their Fifth Amendment rights.  *See id.*

### 3. No Cognizable Fifth or Thirteenth Amendment Claims.

For the foregoing reasons, Plaintiffs have not asserted a plausible, cognizable legal theory under the Fifth or Thirteenth Amendments.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' first claim, for violations of Plaintiffs' constitutional rights.

### C. The Court Does Not Grant Leave To Amend.

Plaintiffs request leave to amend their Complaint to include allegations against Defendants in their individual capacities. (Opp. at 6–7.)  Amendment could allow Plaintiffs to avoid the bar of sovereign immunity and seek monetary damages, per *Bivens*, for their alleged constitutional violations.  *See Bivens*, 403 U.S. at 390–91.  However, as discussed above, amendment would be futile since Plaintiffs cannot plead a viable constitutional claim against Defendants under the Fifth or Thirteenth Amendments.  *See Schmier*, 279 F.3d at 824 (finding dismissal without leave to amend proper where amendment would be futile).  Accordingly, the Court **DENIES** Plaintiffs' request for leave to amend the Complaint.

## II. International Law Claims

Plaintiffs claim that low pay for prison labor violates international law, specifically the International Covenant on Civil and Political Rights ("ICCPR")[4] and the "United Nations Covenant of Prisoners Rights." (Compl. ¶¶ 20–23.)   Defendants move to dismiss because neither treaty is binding on this Court and Plaintiffs have not alleged a claim that Defendants actually violated either treaty. (Mot. to Dismiss at 16–19.)  The Court addresses these arguments, taking each treaty in turn.

### A. Plaintiffs Do Not State a Claim Under the ICCPR.

Plaintiffs allege that Defendants violated Articles 7, 8, and 10 of the ICCPR. (Compl. at 8.) These articles prohibit torture and cruel, inhuman, or degrading treatment, as well as servitude

---

[4] Plaintiffs' Complaint actually alleges a violation of the "United Nations Covenant of Political and Civil Rights" and provides no citation.  Defendants' Motion to Dismiss identifies this as a misstated reference to the ICCPR, and all Parties' subsequent briefing refers to the ICCPR.  The Court therefore understands the ICCPR to be the treaty at issue.

8

absent a lawful court order. *See* ICCPR arts. 7, 8, 10, Dec. 16, 1966, 999 U.N.T.S.171, 6 I.L.M. 368. Defendants, however, assert that the ICCPR is not binding on this Court because it is not self-executing. (Mot. to Dismiss at 17.) Additionally, Defendants argue that Plaintiffs have failed to state a violation of the ICCPR. (*Id.* at 18.)

Defendants claim that the ICCPR is not binding on this Court because it is not self-executing. "For any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing." *Cornejo v. County of San Diego*, 504 F.3d 853, 856–57 (9th Cir. 2007). Defendants correctly point out that the Senate ratified the ICCPR subject to the condition that it was *not* self-executing. 138 Cong. Rec. S4781, 4784 (daily ed. Apr. 2, 1992) ("[T]he United States declares that the provisions of Articles 1 through 27 of the Covenant are not self-executing."); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004) (citing the ICCPR as an example of non-self-executing, and thus non-enforceable, treaties).[5] The ICCPR is therefore not enforceable law and does not provide Plaintiffs with a legal claim or remedy.

In any case, Defendants claim that Plaintiffs' Complaint does not allege a violation of the ICCPR. (Mot. to Dismiss at 18.) Plaintiffs do not respond to this argument, and the Court agrees with Defendants. Defendants correctly note that ICCPR Article 8(3)(c)(1) explicitly allows prison labor when pursuant to a valid criminal sentence. (*Id.*) Article 8 prohibits forced or compulsory labor but "shall not include . . . [a]ny work or service . . . normally required of a person who is under detention in consequence of a lawful order of a court . . . .." ICCPR art. 8(3)(c)(1). Here, Plaintiffs are or were serving detention as inmates, and have pleaded no facts showing that the exemption in Article 8(3)(c)(1) does not apply.

Accordingly, because the treaty is not self-executing and Plaintiffs have not provided a cognizable legal theory showing violation of the treaty, the Court does not find that Plaintiffs have pleaded a plausible claim based on the ICCPR. *See Twombly*, 127 S.Ct. at 1974; *SmileCare Dental Group*, 88 F. 3d at 782.

**B.     Plaintiffs Do Not State a Claim Under the "United Nations Covenant Of**

---

[5] Plaintiffs contend that *Sosa's* discussion of the ICCPR is dicta and not binding. (Opp. at 15.) However, the Court finds it persuasive, particularly in light of *Cornejo*. *See Cornejo*, 504 F.3d at 856.

9

**Prisoner Rights."**

Plaintiffs next claim that Defendants violated prisoners' rights under the "United Nations Covenant of Prisoners Rights" paragraph 76. (Compl. ¶ 21.) The Court understands this argument as asserting a violation of the Standard Minimum Rules for the Treatment of Prisoners adopted by the Economic and Social Council of the United Nations ("Standard Minimum Rules").[6] Paragraph 76 of the Standard Minimum Rules states "[t]here shall be a system of equitable remuneration of the work of prisoners." U.N. Econ. & Soc. Council [ECOSOC], *Standard Minimum Rules for the Treatment of Prisoners*, ¶ 76, ECOSOC Res. 663 C (XXIV), U.N. Doc. A/CONF/611 (July 31, 1957), and ECOSOC Res. 2076 (LXII), U.N. Doc. E/5988 (May 13, 1977). This paragraph states that prisoners shall be able to use wages for their own spending and to send to families, and that prisons shall establish savings accounts. *Id.* Defendants move to dismiss this claim because the Standard Minimum Rules are not binding on this Court. (Mot. to Dismiss at 18–19.)

The Standard Minimum Rules are a guidance document prepared by an international organization. They are not laws of the United States, nor are they a United States treaty binding on this Court. *See* U.S. CONST art. III § 2 (extending judicial power to the "Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority"). Accordingly, Plaintiffs' claim under this U.N. document is not legally cognizable.

**C.    Neither Treaty Is Made Applicable by the Alien Tort Claims Act.**

In the alternative, if the ICCPR and the Standard Minimum Rules are not binding, Plaintiffs argue that Defendants' actions violate the "law of nations." (Opp. at 16–18.) The Court understands Plaintiffs to claim that because Defendants allegedly violated the ICCPR or the Standard Minimum Rules, they have violated the law of nations, and Plaintiffs' claims are therefore cognizable under the Alien Tort Claims Act. 28 U.S.C. § 1350. However, this theory is not alleged

---

[6]Again, Plaintiffs' Complaint, without citation, refers to a document of which Defendants, and the Court, are unaware. (*See* Compl. ¶ 21; Mot. to Dismiss at 16.) Plaintiffs' hyperlink to the treaty does not work. (Opp. at 14.) Defendants attempt to correct what appears to be Plaintiffs' misstatement and point to the Standard Minimum Rules for the Treatment of Prisoners adopted by the Economic and Social Council of the United Nations ("Standard Minimum Rules"). (Mot. to Dismiss at 16; Reply at 14.) However, Plaintiffs never adopt that title, and continue to refer to a "United Nations Covenant of Prisoners Rights." (*See* Opp. at 18.) Because the Standard Minimum Rules appears to be the relevant document, the Court analyzes Plaintiffs' claims pursuant to this agreement.

To the extent that Plaintiffs intend to reference a document other than the Standard Minimum Rules, they have not pointed this Court to such an authority, and the Court does not consider any such claim.

10

1  in the Complaint, nor are facts alleged that would make this claim viable. The Alien Tort Claims
2  Act allows jurisdiction over aliens, and Plaintiffs have not pleaded facts asserting that they are
3  aliens.[7] *See id.*; *Harbury v. Hayden*, 444 F. Supp. 2d 19, 38 (D.D.C. 2006) (finding a claim under
4  the Alien Tort Claims Act unavailable to a U.S. Citizen). Moreover, Plaintiffs have not pleaded
5  facts alleging that the ICCPR or the Standard Minimum Rules, let alone a prisoner salary of $25.00
6  per hour, has the universal international agreement required to establish a violation of the law of
7  nations. *See Filartiga v. Pena-Irala*, 630 F.2d 876, 880–81 (2d Cir. 1980) (holding that torture
8  violates the law of nations "[i]n light of the universal condemnation of torture in numerous
9  international agreements, and the renunciation of torture as an instrument of official policy by
10 virtually all of the nations of the world . . . ."); *see also Sosa*, 542 U.S. at 732–33 (upholding
11 stringent criteria for claims under the law of nations, and citing *Filartiga* to be exemplary of that
12 criteria). Therefore, Plaintiffs' argument that Defendants' actions violated the law of nations is
13 unavailing.

14 For the foregoing reasons, the Court **DISMISSES**, without leave to amend, Plaintiff's second
15 claim, alleging violations of international law. *See Twombly*, 127 S.Ct. at 1974; *SmileCare Dental*
16 *Group*, 88 F. 3d at 782; *Schmier*, 279 F.3d at 824.

17 **III.   Leave To Amend Complaint To Add a False Imprisonment Claim**

18 Plaintiffs seek leave to amend the Complaint to add a claim for false imprisonment. (*See*
19 Opp. at 5–6.) Amendment could allow Plaintiffs to seek monetary damages from the government by
20 way of the Federal Tort Claims Act. (*See id.*) However, the Court finds that amendment would be
21 futile because Plaintiffs cannot plausibly assert a false imprisonment claim.

22 "In California . . . the elements of false imprisonment are: '1) the nonconsensual, intentional
23 confinement of a person, 2) without lawful privilege, and 3) for an appreciable period of time . . . .'"
24 *Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1205 (9th Cir. 2003)
25 (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal App. 4th 485, 496 (2000)). In the present case,
26 Plaintiffs cannot plausibly plead an absence of lawful privilege. *See Blaxland*, 323 F.3d at 1205
27 (comparing false imprisonment to malicious prosecution, and noting that absence of legal process is
28

---

[7]At oral argument, Plaintiffs' counsel clarified that Plaintiffs are not aliens.

11

a key aspect of false imprisonment). Here, it is alleged and confirmed at oral argument that Plaintiffs do not challenge the process by which their conviction and sentencing was obtained. In addition, the Thirteenth Amendment explicitly allows prison labor pursuant to a conviction, and federal law, 28 C.F.R. § 345.10, gives UNICOR complete discretion over pay rates for prisoners. (*See* Reply at 10; Mot. to Dismiss at 16 n.9.) *See also Draper*, 315 F.2d at 197 (finding compulsory prison labor legitimate and the Thirteenth Amendment inapplicable); *McMaster*, 819 F. Supp. at 1442 (finding no right to fair wages for prisoners). Therefore, not only did Defendants have the legal privilege to imprison and require work from Plaintiffs, but they also had lawful discretion over their pay while in prison. In light of the above conclusions, Plaintiffs cannot plausibly allege absence of legal privilege for Plaintiffs' work or pay rate.

Accordingly, the Court **DENIES** Plaintiffs' leave to amend. *See Schmier*, 279 F.3d at 824 (finding dismissal without leave to amend proper where amendment would be futile); *see also Twombly*, 127 S.Ct. at 1974 (requiring a plausible claim in order to survive motion to dismiss); *SmileCare Dental Group,* 88 F. 3d at 782 (requiring cognizable legal theory*).*

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss in its entirety. The action is dismissed with prejudice against the two Defendants who brought this Motion, Lappin and McFadden. The docket does not reflect that Plaintiffs served the third Defendant, B. G. Compton, within 120 days after the filing of the complaint, as required by Federal Rule of Civil Procedure 4(m). The Court therefore dismisses this action without prejudice against B.G. Compton. *See* Fed. R. Civ. P. 4(m) (requiring the district court in this situation to dismiss an action without prejudice or require that service is effected within a specified time with good cause shown). The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

Dated: April 3, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE